**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Gordonmark W. Butler,**

           **Plaintiff,**        **Civil Action No. 11-10021**

      **vs.**             **District Judge Denise Page Hood**

**Commissioner of Social**      **Magistrate Judge Mona K. Majzoub**
**Security,**

           **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gordonmark W. Butler has filed this civil action seeking judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security income and disability benefits for his depression and mental disorder. (Dkt. 1.) *See* 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment. (Dkt. 13, 16.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and is now ready to issue its report and recommendation.[1]

## I. Recommendation

Plaintiff argues that Defendant's findings of facts are not supported by substantial evidence. (Pl.'s Mot. for Summ. J. at 1.) Plaintiff narrows his attack on Defendant's findings to three issues:

      I.     Whether Defendant erred in not listing major depression as a Step 2 severe

_____

[1]E.D. Mich. LR 7.1(f)(2).

1

impairment.

II. Whether Defendant erred in failing to accord controlling weight to the disability opinion of Plaintiff's treating physician.

III. Whether Defendant erred in relying solely upon the grid rules to deny Plaintiff in the presence of significant non-exertional limitations stemming from Plaintiff's mental illness.

Defendant counters Plaintiff's arguments and argues that substantial evidence does support Defendant's decision. Because the Court finds Plaintiff's arguments unavailing, the Court RECOMMENDS that Plaintiff's motion for summary judgment be DENIED, Defendant's motion for summary judgment be GRANTED, and this case be DISMISSED.

## II. Report

### A. Procedural facts

Plaintiff first filed for disability and supplemental income benefits on July 12, 2006 seeking benefits from June 5, 2002 for significant mental disorders, chronic depression, attention deficit disorder, kidney disease, angina, severe asthma, and osteoarthritis. (AR at 15, 238.) On January 8, 2007 Defendant denied Plaintiff's initial request. (*Id*. at 15.) Plaintiff then requested a hearing reviewing the denial; a hearing was held on June 16, 2009. (*Id*.) On July 19, 2009 the ALJ denied Plaintiff's request for benefits. (*Id*. at 12.) On August 12, 2009 Plaintiff sought review of the ALJ's decision. (*Id*. at 8.) On December 3, 2010 the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id*. at 1.) Plaintiff filed this complaint on January 3, 2011 seeking review of Defendant's final decision. (Dkt. 1.)

### B. Background facts

Plaintiff's appeal to this Court centers around Plaintiff's mental condition. The Court therefore focuses on the facts relevant to Plaintiff's mental condition arguments.

2

### 1.      Plaintiff's relevant medical records

The earliest mental health reports in the record are from when Plaintiff was in prison.  An August 9, 2002 referral report summarizes a psychological test performed on Plaintiff.  (*Id*. at 351.) The summary shows that Plaintiff produced a profile that showed he was "having measures of antisocial behavior, including impulsivity, substance abuse . . . deception, manipulation, and long standing character problems." (*Id.*)  The summary also shows that he had "[d]epressive tendencies," as well as "bizarre experiences, strange thoughts, and poor problem solving skills." (*Id.*)  But the report also states that "[t]he overall test results indicated no evidence of current psychosis or organicity." (*Id.*)  The referral report also states that Plaintiff exhibited no attributes of "current psychosis, major depression, anxiety, or suicidal ideation." (*Id*. at 352.)  But there are 2002 prison reports that show that Plaintiff reported "auditory hallucinations" while in prison. (*Id*. at 331, 337.) Reports also show that he had a "depressed mood." (*Id*. at 347.)

A year later, in July, 2003 Plaintiff had a Michigan Department of Corrections Bureau of Health Care annual mental health assessment.  (*Id*. at 327.)  The assessment shows that Plaintiff expressed feeling depressed.  (*Id.*)  And the assessment shows that Plaintiff was generally angry. (*Id.*)

Plaintiff had another mental health assessment a year later.  That assessment found that Plaintiff had "no active formal thought disorders[.]" (AR at 325.)

In August, 2004 the Department of Corrections Bureau of Health Care filled out a recommendation report after Plaintiff completed his required therapy.  (AR at 322.)  The report shows that Plaintiff was an "active member of [his therapy] group." (*Id*. at 323.)  The report also states that Plaintiff "made good comments, gave good feedback, and appeared to accept constructive

criticism from others." (*Id.*)  The report indicates that Plaintiff was "aware of the fact that he has an imposing presence." (*Id.*)  This "self awareness," the report shows, "is of benefit to him in that he is able to self-monitor and take appropriate action rather than action which would be intimidating and frightening to others." (*Id.*)  The report summarizes Plaintiff as "a man of good intelligence [that] appears to be eager to learn and understand things, including himself and what factors motivate him to behave in certain ways." (*Id.*)

Several years later, in 2006 Plaintiff began a psychiatric-treating relationship with Dr. Arvind Kumar, a psychiatrist at a Veterans Affairs Hospital in Saginaw Michigan.  Plaintiff heavily relies on Dr. Kumar's notes in his motion for summary judgment.

In September, 2008 several years after Dr. Kumar began his relationship with Plaintiff, Dr. Kumar sent a note regarding Plaintiff's disability benefits:

> [Plaintiff] has been diagnosed with major depression with the following symptoms: Poor sleep, poor appetite, crying spells, suicidal thoughts off and on.  He has no alcohol or drug abuse problems.  He used to be on Social Security Disability until 2002 which was unfortunately cut off and since he cannot function I strongly recommend that he should be given his Social Security back because his condition is not good.  He is being treated by me with medication and supportive psychotherapy. . . . Due to the fragility of his emotioanal [sic] and physical illness, he is unable to do any gainful activity indefinitely so I will strongly recommend that you reconsider his case as he cannot function anymore.   If you need further information please do not hesitate to contact the undersigned. Thank you.

(AR at 549.)

Despite this note, Dr. Kumar had formed a less definitive opinion about Plaintiff at the beginning of their relationship.  On July 25, 2006 Plaintiff stated to Dr. Kumar that he stopped his medications in prison and denied that he was feeling depressed. (AR at 398.)  Plaintiff also denied feeling suicidal or homicidal or experiencing delusions or hallucinations.  (*Id.*)  Plaintiff further stated that he was able to sleep and trying to go to rehabilitation.  (*Id.*)  Dr. Kumar noted that

Plaintiff was dressed appropriately, that his speech was coherent and relevant, and that Plaintiff was alert. (*Id.*) Dr. Kumar also noted that Plaintiff appeared somewhat anxious. (*Id.*)

Several months later, on September 27, 2006 Dr. Kumar saw Plaintiff again. (AR at 472.) Dr. Kumar diagnosed Plaintiff with depression. (*Id*. at 474.) Dr. Kumar noted that Plaintiff's psychosis and alcohol abuse were in remission. (*Id.*) Dr. Kumar found that Plaintiff's grooming and hygiene and mood and affect were appropriate. (*Id.*) He also stated that Plaintiff denied any suicidal or homicidal feelings and delusions or hallucinations. (*Id.*)

Plaintiff also relies upon the records of Nathalie Menendes, a doctor of psychology, who saw Plaintiff on December 21, 2006. (AR at 480.) Plaintiff told Dr. Menendes that he had difficulty sleeping and that he ate only once a day. (*Id.*) He also told her that "[m]ost of the time, he feels sad." (*Id.*) He stated that he did not socialize with people other than his relatives. (*Id.*) He also reported that he did not enjoy doing anything, other than watching television. (*Id.*)

Plaintiff told Dr. Menendes that he did not have any friends and that he did not belong to any groups, organizations, or churches. (*Id*. at 482.) Dr. Menendes stated that "[r]apport with [Plaintiff] was easy." (*Id.*)

Dr. Menendes stated that Plaintiff's "contact with reality was adequate . . . .though he does firmly believe that people plot against him and lie to him." (*Id*. at 482.) But Dr. Menendes stated that Plaintiff was "reluctant to admit that his paranoia taints his way of seeing the world and others." (*Id.*) But generally, Dr. Menendes found that Plaintiff's thoughts were "mostly logical and organized." (*Id.*)

### 2.    The hearing

On June 16, 2009, Plaintiff appeared at his disability hearing. (AR at 28.) The hearing is

5

mostly unremarkable for the purpose of these motions.  At it, Plaintiff did state that

> The psych medications have helped me a lot because the thoughts that I have are voices that tell me to do things to myself or to other people, and that's one of the reasons why I went to prison, and the medication does help me with the racing thoughts, the voices are still there, but they're not as pronounced as they were. I'm better able to resist them, I think, and I don't - - and I'm still suffering from depression.

(*Id*. at 39.)  He stated that he had racing thoughts, voices, depression, anxiety and psychotic impulses.  (*Id*. at 43.) He added that these impairments have affected him in the workplace because they make him uncomfortable around large groups and give him anxiety around bosses and supervisors.  (*Id*.)  But he also stated that his treatment was helping.  (*Id*.)  Plaintiff also stated that he visits his family or friends once or twice a week.  (*Id*.)  And he also attends church every other week.  (*Id*. at 44.)  He stated that he has no problems interacting with his fellow churchgoers.  (*Id*.)

When questioned by his attorney, Plaintiff stated that hears voices, although the medication he takes quiets the voices.  (*Id*. at 50.)  He also stated that the voices tell him that certain people are going to hurt him, or that he needs to pull off his toenails because they are too long.  (*Id*. at 49.)  He also stated that he has racing thoughts and crying spells.  (*Id*. at 50.)

As to his then current personal and work life, Plaintiff stated that he is able to take dress himself mostly, although he does sometimes needs his girlfriend to remind him to bathe and shave.  (AR at 40.)  But he also stated that he is able to do the dishes and various chores around the house.  (*Id*.)  For interaction, he stated that he frequently visits family members with his sister or nieces or his family members visit him.  (*Id*. at 40, 43.)  Plaintiff also stated that he goes to church every other Sunday and that he has no trouble getting along with the other churchgoers.  (*Id*. at 43.)

For work, Plaintiff stated that he works in his sister's office–answering the phone and scheduling pick-up times for donations.  (AR at 43.)

The ALJ then posed one question to the vocational expert: whether, if Plaintiff's testimony and records were entirely reliable, there would be any jobs that Plaintiff could perform. (AR at 52.) The vocational expert testified that there would not be any jobs that he could perform due to the exertional and nonexertional limitations that Plaintiff claimed he suffered from. (*Id.*) Plaintiff's counsel asked no questions of the vocation expert. (*Id.*)

### 3.    The ALJ's written decision

On July 16, 2009 the ALJ issued his written decision denying Plaintiff's request for benefits. In his decision, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis, degenerative disc disease, adjustment disorder, and personality disorder. (AR at 17.) The ALJ then addressed Plaintiff's mental impairment allegations. He held that Plaintiff's mental impairments, "considered singly and in combination," did not meet or medically equal the criteria required for them to constitute a disability. (*Id*. at 19.) The ALJ acknowledged that Plaintiff claimed having significant mental disorders, chronic depression, and attention deficit disorder. (*Id.*) The ALJ also acknowledged that Plaintiff alleged that he was anti-social and prone to passive aggressive behavior. (*Id.*) The ALJ noted that Plaintiff stated that, when not taking his medication, he feels as if other people are plotting, planning, and conspiring against him. (*Id.*) And the ALJ noted that Plaintiff reported that he had difficultly concentrating on minor tasks and, as a result, his inability to concentrate had caused issues with this employers and coworkers. (*Id.*) The ALJ also noted that Plaintiff reported that the medication did help the voices and racing thoughts he hears to not be as pronounced as they were. (*Id.*)

The ALJ then reviewed Plaintiff's psychological testing and counseling reports that were conducted when Plaintiff was in prison. (*Id.*) The ALJ noted that Plaintiff's evaluations showed

that he exhibited antisocial behavior, including impulsivity, substance abuse, deception, manipulation, and long-standing character problems.  (*Id.*)  The ALJ stated that Plaintiff had not claimed that he was suicidal.  (*Id.*)

The ALJ reviewed Plaintiff's treatment notes from prison.  (AR at 20.)  The ALJ stated that Plaintiff's "treatment notes from his therapy sessions were generally unremarkable as they indicated [that Plaintiff] made steady progress towards his goals[.]" (*Id.*)  The ALJ noted that Plaintiff's treatment notes showed that his symptoms of depression "were frequently described as decreasing and [Plaintiff's] therapy termination report indicated [that Plaintiff] made good progress towards his therapeutic goals and objectives." (*Id.*)

The ALJ then reviewed Plaintiff's treatment relationship with Dr. Kumar.  (AR at 20.)  The ALJ noted that Dr. Kumar diagnosed Plaintiff with depression with psychotic features, a history of alcohol and marijuana abuse in full remission, and antisocial traits.  (*Id.*)  The ALJ acknowledged the letter that Dr. Kumar sent in 2008, offering his opinion that Plaintiff be reconsidered for disability benefits.  (*Id*. at 21.)

The ALJ also reviewed the examination of Plaintiff performed by Dr. Menendes.  (AR at 20.) The ALJ noted that Menendes's results showed that Plaintiff's thoughts were logical and organized, even though Plaintiff sometimes experienced paranoid thoughts.  (*Id*. at 21.)  Dr. Menendes diagnosed Plaintiff with recurrent major depressive disorder, with psychotic features, alcohol abuse in full sustained remission, cannabis use in full sustained remission, and personality disorder with antisocial features.  (*Id.*)

The ALJ ultimately held that the evidence in the record about Plaintiff's mental impairment did not fully corroborate Plaintiff's allegations.  (AR at 20.)  The ALJ pointed out that Plaintiff's

8

statement concerning the number of hours he worked was not consistent with the evidence. (*Id.*) The ALJ also pointed out that, although Plaintiff reported extreme issues interacting with other people, he testified that he regularly visited with his sister and his nieces, either at their homes or his. (*Id.*) The ALJ also noted that Plaintiff was maintaining a relationship with his girlfriend and that Plaintiff's current job required him to have phone contact with other people. (*Id.*) The ALJ lastly noted that Plaintiff reported attending church every other week and that he had no problems getting along with other people. (*Id*. at 21-22.)

Taking these findings, the ALJ held that Plaintiff's allegations of his mental impairment were not fully supported by the record and thus the ALJ stated that he gave little weight to the findings when he determined the severity of Plaintiff's mental impairments and in determining Plaintiff's RFC for work-related activities. (*Id*. at 22.)

The ALJ also explained why he gave limited weight to Dr. Arvind's "To Whom It May Concern" letter. (*Id.*) The ALJ did so because he found that Dr. Arvind's treatment notes were "generally unremarkable and failed to fully support his opinion that [Plaintiff] would be unable to work to due to his mental impairments." (*Id.*)

The ALJ reasoned that he gave more weight to the DDS medical consultant and examiners' opinions because their opinions "were highly corroborated by the mild to moderate findings in the objective medical evidence of record." (*Id.*)

The ALJ concluded that Plaintiff had mild restrictions in daily living activities, moderate difficulties in maintaining social functioning, and moderate difficultly maintaining concentration, persistence, or pace, and no periods of decompensation.[2] (*Id.*)

---

[2]

These factors are the factors that 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders

In making the residual functional capacity determination, the ALJ "still considered the impairments when assessing [Plaintiff's RFC]." (AR at 26.) The ALJ determined that Plaintiff could do no more than simple tasks on a sustained basis and that Plaintiff would therefore be limited to "unskilled work." (*Id.*)

The ALJ then, using the vocational guidelines, and noting that Plaintiff retained the ability to perform unskilled work, directed a finding of "not disabled."

## C.    Standards

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383,

---

requires Defendant to analyze when determining whether a claimant's mental disorder is severe and limits the claimant's ability to perform substantial gainful activity. Paragraph C requires Defendant to assess the claimant's functional limitation using the four criteria in Paragraph B of the listings: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* The requisite severity is met when the claimant shows that he has two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. *Id.* at 12.04(b).

387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### 1.    Framework for social security disability determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and

2. he suffered from a severe impairment; and

3. the impairment met or was medically equal to a "listed impairment;" or

4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available

in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the

Commissioner must make a finding "supported by substantial evidence that [the claimant] has the

vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*,

820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form

of vocational expert testimony in response to a hypothetical question, "but only 'if the question

accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations

omitted).

### D.      Analysis

Plaintiff has posited three issues why the Court should grant his motion for summary

judgment. The issues are:

I.      Whether Defendant erred in not listing major depression as a Step 2 severe impairment.

II.     Whether Defendant erred in failing to accord controlling weight to the disability opinion of Plaintiff's treating physician.

III.    Whether Defendant erred in relying solely upon the grid rules to deny Plaintiff in the presence of significant non-exertional limitations stemming from Plaintiff's mental illness.

The Court addresses each issue, in turn.

### 1.      The ALJ appropriately addressed Plaintiff's depression

Plaintiff first argues that the ALJ's determination that Plaintiff's depression was not a severe

impairment at step two of the sequential analysis is not supported by substantial evidence. (Pl.'s

Mot. for Summ. J. at 7.) In support of this argument, Plaintiff maintains that "[a]ll of the doctors

agreed that the depression imposed limitations on [] Plaintiff's ability to work." (*Id.*) And Plaintiff

centers his argument around Dr. Kumar's opinion that "all work would be precluded." (*Id.*)

Defendant argues that the ALJ did not have to specifically find that depression was a severe impairment, as long as the ALJ found one severe impairment and proceeded to step three of the analysis.

Defendant is correct. In *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987), the Sixth Circuit held that, as long as the ALJ properly considered all of a claimant's impairments in determining the claimant's residual functional capacity, the ALJ's failure to find that one impairment "constituted a severe impairment could not constitute reversible error." *See also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz*, and stating, "[t]he fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant," when the ALJ proceeded through the sequential analysis.). The Court therefore finds that Plaintiff's argument fails–the ALJ proceeded to step three and therefore he did not need to explicitly find that Plaintiff's mental disorders were severe impairments, so long as he addressed the impairments.

Here, the ALJ thoroughly considered all of Plaintiff's impairments. The Court finds that the ALJ's determination that Plaintiff's depression and mental disorders were not severe impairments is supported by substantial evidence.

The Court has presented the facts above that are the substantial evidence that support the ALJ's finding. Briefly, substantial evidence exists in the form of the prison mental health records, which show that, although Plaintiff exhibited depressive tendencies, he exhibited no psychosis. (AR at 351.) The prison mental health reports also show that Plaintiff was an "active member of [his therapy] group." (*Id*. at 323.) Reports also state that Plaintiff "made good comments, gave good feedback, and appeared to accept constructive criticism from others." (*Id.*) The reports show that

13

Plaintiff was self-aware, able to self-monitor, and generally was "a man of good intelligence [that] appear[ed] to be eager to learn and understand things, including himself and what factors motivate him to behave in certain ways." (*Id.*) These reports therefore are substantial evidence that Plaintiff's argument that no substantial evidence exists that supports the ALJ's holding fails.

Substantial evidence also exists in Dr. Kumar's notes, which contradict his ultimate conclusory opinion, as the Court discusses below.

Further evidence exists–Plaintiff testified at the hearing that he was able to work (taking phone calls and scheduling pick-up dates), socialize with family members, go to church, and, for the most part, care for himself.

The Court therefore finds that Plaintiff's mental health records and his testimony at the hearing is more than a scintilla of evidence that Plaintiff's mental health does not markedly affect or preclude him for work–as the ALJ found and used in calculating Plaintiff's residual functional capacity.

### 2.     The ALJ properly addressed Dr. Kumar's opinion

Plaintiff argues that the ALJ erred by not according proper weight to Dr. Kumar's opinion that Plaintiff was entitled to disability benefits. (Pl.'s Mot. for Summ. J. at 7.) Plaintiff argues that the ALJ "gave greater weight to the opinion of a medical consultant" than Dr. Kumar. (*Id.* at 8.)

Defendant argues that Dr. Kumar's written letter is an impermissible opinion that "impinges on matters reserved to [Defendant.]" (Def.'s Mot. for Summ. J. at 6.) Defendant additionally argues that the ALJ did properly address Dr. Arvind's opinion and properly did not rely upon the opinion because the opinion was conclusory and not supported by detailed objective criteria and

14

documentation.  (Def.'s Mot. for Summ. J. at 7.)

> **a.**   **The disability determination is within the Commission's province, not Dr. Kumar's**

As Defendant points out, "the determination of disability is the prerogative of the [Commissioner,] not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390-91 (6th Cir. 2004) (citing *Heckler*, and finding that the ALJ properly rejected the treating source's opinion when substantial evidence supported the ALJ's decision to not give controlling weight to the treating physician's opinion because the opinion was inconsistent with other substantial evidence. (citing 20 C.F.R. § 404.1527(d)(2), which states that the Commissioner will give controlling weight to a treating physician's opinion if it "is not inconsistent with the other substantial evidence in [the] case record.")).

Here, Dr. Kumar has offered a conclusory finding–and the Court must treat that finding appropriately.  Dr. Kumar stated that Plaintiff is "unable to do any gainful activity indefinitely" as a result of his emotional fragility and physical illness.  But Dr. Kumar did not offer any evidence supporting his conclusion.  Dr. Kumar stated the symptoms from which Plaintiff was suffering: poor sleep, poor appetite, crying spells, suicidal thoughts off and on.  And Dr. Kumar stated that Plaintiff's condition was "not good."  What Dr. Kumar's statement lacks, though, is anything showing how Plaintiff cannot perform any work–any evidence that Plaintiff's symptoms actually limit his ability to work in any capacity.

In fact, as noted above, contrary evidence exists in Dr. Kumar's notes that contradict Dr. Kumar's conclusory opinion.  In 2006 Dr. Kumar noted that Plaintiff denied feeling depressed, denied having suicidal or homicidal thoughts, was able to sleep, and wanted to go to rehabilitation.

(AR at 398.)  Dr. Kumar also noted that Plaintiff had dressed appropriately, was coherent and relevant, and was alert.  (*Id.*)  Although Dr. Kumar noted that Plaintiff appeared anxious, Dr. Kumar did not indicate in anyway that that anxiety was so debilitating as to prevent Plaintiff from work. Even several months later, Dr. Kumar noted that Plaintiff was depressed, but also that Plaintiff's psychosis and alcohol abuse were in remission, that Plaintiff's grooming and hygiene and mood and affect were appropriate.  (*Id*. at 474.)

The Court therefore finds that the ALJ was not required to rely upon Dr. Kumar's statement, because it was conclusory, unsupported by substantial evidence, and contradicted by Dr. Kumar's own previous notes.

### b.    Treating source rule

Plaintiff also argues that the ALJ was required to give more deference to Dr. Kumar's opinion, because Dr. Kumar was a treating source.  The Court disagrees.

The Commissioner has imposed "certain standards on the treatment of medical source evidence."  *Cole v. Astrue*, –F.3d–, 09-4309, 2011 WL 5456617, at *4 (6th Cir. Sept. 22, 2011) (citing 20 C.F.R. § 404.1502).  Under the treating source rule, the ALJ must "give a treating source's opinion controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Id*. (citing 20 C.F.R. § 404.1527(d)(2)).  If the ALJ does not give controlling weight to the treating source's opinion, he "must then balance the following factors to determine what weight to give it:" "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Id*. (citing *Wilson v. Comm'r of Soc.*

16

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) and 20 C.F.R. § 404.1527(d)(2)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (citation omitted).

The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id.* at *10 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

If the ALJ fails to follow an agency rule or regulation, then the ALJ's failure "denotes a lack of substantial evidence, even where the [ALJ's conclusion] may be justified based upon the record." *Id.* at *3 (citation omitted).

But a failure to follow the treating source rule can be deemed "harmless" if the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[.]" *Id.* (citation omitted). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r of Soc. Sec.*, 10-25, 2011 WL 3049146 at *9 (E.D.Tenn. July 5, 2011) (citing *May v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D.Ohio Dec. 9, 2009) (finding treating source opinion patently deficient where treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence.").

Here, the ALJ properly discussed and did not rely upon Dr. Kumar's statement.   As the Court has stated already, the ALJ also explained why he gave limited weight to Dr. Arvind's "To Whom It May Concern" letter.  (AR at 22.) The ALJ did so because he found that Dr. Arvind's

treatment notes were "generally unremarkable and failed to fully support his opinion that [Plaintiff] would be unable to work to due to his mental impairments." (*Id.*) The Court agrees. The Court therefore agrees with the ALJ's determination not to heavily weigh Dr. Kumar's opinion. The ALJ properly rejected Dr. Kumar's opinion.

### 3.    The ALJ did not err in using the grid regulations to find that Plaintiff could perform work

Plaintiff finally argues that the ALJ improperly used the vocational guidelines (the" grids"). He argues that the grid rule consider only exertional or strength limitations and "generally cannot be applied in the presence of significant non-exertional limitations such as mental illness." (Pl.'s Mot. for Summ. J. at 9.) Plaintiff argues that the ALJ did not consider Plaintiff's nonexertional limitations, which Plaintiff argues include: lack of focus, inability to complete a task, problems maintaining attention and concentration on a sustained basis, racing thoughts, voices and psychotic impulses. (*Id*. at 10.)

Defendant argues that the existence of depression, personality disorder, or other severe mental impairments does not necessary mean that the ALJ cannot use the grids. (Def.'s Mot. for Summ. J. at 8.)

In the sequential analysis, once the ALJ determined that Plaintiff could not perform past relevant work, the burden shifts to Defendant to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Buress v. Sec'y of Health and Human Servs.*, 835 F.2d 139, 142 (6th Cir. 1987) (citation omitted). "The [Commissioner] may meet this burden by reference to the medical vocational guidelines (the "grids") unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations." *Id*. (citations omitted). "A nonguideline

18

determination is required only if "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level . . . ."  A mere allegation of nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of sedentary work."  *Id*. at 142-43 (citation omitted).

Plaintiff's argument fails then–Plaintiff has only attacked the usage of the grids, not the ALJ's underlying findings.  And here, the ALJ's determination that Plaintiff's mental impairments did not limit his ability to perform unskilled work is supported by substantial evidence, and therefore the ALJ could reasonably use the grids to deny Plaintiff's disability benefits request.

### E.   Conclusion

For the above-stated reasons, the Court recommends DENYING Plaintiff's motion for summary judgment, GRANTING Defendant's motion for summary judgment, and DISMISSING this case.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  November 21, 2011                  s/ Mona K. Majzoub                             
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated:  November 21, 2011                  s/ Lisa C. Bartlett          
                                           Case Manager

21